**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| STEPHANIE ROSA | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| | * | |
| v. | * | Civil Action No. 8:11-cv-02873-AW |
| | * | |
| BOARD OF EDUCATION OF CHARLES | * | |
| COUNTY, MARYLAND *et al.* | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Stephanie Rosa brings this action against Defendants Board of Education of

Charles County, Maryland ("the Board") and Patrick Andrew Tague. Plaintiff's Amended

Complaint sounds in sexual harassment. In total, Plaintiff asserts eleven claims. Currently

pending before the Court are two motions: (1) the Board's Motion to Dismiss; and (2) the

Board's Motion to Strike Portions of Amended Complaint ("Motion to Strike"). The Court has

reviewed the record and deems no hearing necessary. For the reasons articulated below, the

Court **GRANTS IN PART AND DENIES IN PART** the Board's Motion to Dismiss and

**DENIES** the Board's Motion to Strike.

**I.       FACTUAL & PROCEDURAL BACKGROUND**

The Court draws the following facts from the Amended Complaint and views them in a

light most favorable to Plaintiff. Plaintiff Stephanie Rosa ("Rosa") was hired as a temporary

office assistant in the Food Service Department for the Board in June 2003. After having taken

leave for an extended period of time to care for her child, Rosa returned to the Food Service Department in 2007.

When Rosa returned to work in 2007, she was under the supervision of Defendant Patrick Tague ("Tague"). Around this time, Rosa alleges that Tague started making sexually inappropriate remarks to her. For example, Rosa reports that Tague commented that she had a "nice ass" as she walked up the stairs, and that he would pat or slap her backside in the office. Rosa avers further incidents of inappropriate touching, such as Tague's tendency to rub or pat her leg. Furthermore, Tague allegedly once asked Rosa if she would have sex with him. Rosa contends that she consistently objected to Tague's conduct, but that her objections failed to stop Tague from harassing her.

Rosa maintains that Tague did not limit his inappropriate conduct to her. Allegedly, there were at least two reports that Tague was caught engaging in sexual relations with other coworkers at the workplace. On one occasion, Tague allegedly was caught having sexual relations with another female employee in the mail room after office hours. On the other occasion, Tague allegedly was caught having sexual relations with a different female employee in his office during office hours. The first incident allegedly was reported to Brian Law, who at the time worked for the Board as security personnel. The second incident allegedly was reported to Human Resources. According to Rosa, Law ensured the employees that security cameras would be installed to deter the conduct from reoccurring. However, Rosa alleges that no security cameras were installed. Nor allegedly did Human Resources conduct a formal investigation into Tague's behavior.

Rosa alleges that other Board employees in the Department engaged in similar instances of sexual misconduct. For instance, four women allegedly complained to Human Resources that

a maintenance foreman had sexually harassed them. Likewise, in 2001–2002, a female employee reported her supervisor to Human Resources based on allegations of sexual harassment. Rosa asserts that the Board failed to take corrective action in both instances.

On June 8, 2010, Tague allegedly called Rosa into his office to receive an assignment. Once she arrived, Tague requested that she retrieve paper from a printer located behind his desk. Rosa walked around his desk to the printer, whereupon Tague turned his chair around, jerked Rosa's dress above her waist, and remarked, "Nice!" Rosa allegedly exclaimed "Don't do that!" and fled Tague's office.

Two days later, Tague called Rosa into his office to give her a different assignment. Rosa entered his office and sat down in front of his desk. Tague asked her if she had a "boob job" and to let him touch her breasts so he could see if they felt like her mother's. Reportedly feeling embarrassed and humiliated, Rosa said no. Nevertheless, Tague allegedly walked around his desk, reached into Rosa's shirt, grabbed her bare breast, and exclaimed, "Nice!" Rosa asserts that she objected to this behavior and pushed Tague away.

On June 14, 2010, Rosa reported both sexual assault incidents to Human Resources. During the ensuing investigation, Tague was removed from the office building and placed on administrative leave.

Around this time, Rosa brought Tague's alleged harassment to the attention of the State's Attorney. On June 23, 2010, the State's Attorney's Office in the District Court for Charles County initiated criminal charges against Tague. The charges included second degree assault and fourth degree sexual offense.

Rosa inquired with Human Resources about Tague's investigation. Human Resources notified her that the internal investigation was complete and that Tague was allowed to return to

work. Allegedly fearing for her safety, Rosa filed a Petition for a Temporary Peace Order in the District Court of Maryland for Charles County. The Peace Order was finalized and officially granted on July 7, 2010. In compliance with the Order, Tague began working in an office building operated by the Board located across the street.

On July 26, 2010, about three weeks after the Peace Order was finalized, Rosa was notified of her transfer to T.C. Martin Elementary. On July 28, 2010, Rosa began working at T.C. Martin Elementary and worked there for eleven months.

While employed at T.C. Martin, Rosa was responsible for tasks like sharpening pencils, cutting out construction paper, and various administrative duties. Rosa contends that her new job duties were below her intelligence level and substantially less sophisticated than the work she was responsible for at the Food Service Department. For instance, Rosa asserts that, in her previous position, she had to draft school cafeteria menus and provide clerical support to the management staff of a department with a $10 million dollar budget. In addition to the change in job duties, Rosa maintains that she received fewer work hours. Specifically, Rosa alleges that she worked thirty-five hours a week in her previous position, whereas her new position limited her to no more than twenty. Finally, Rosa alleges that she voluntarily resigned from her position with T.C. Martin in August 2011 because of the change in her job duties and reduced hours and pay.

On October 6, 2011, Defendants removed the instant lawsuit. Doc. No. 1. Rosa's Amended Complaint and the Board's Motion to Dismiss were registered on the same day. Doc. Nos. 18, 20. Rosa's Amended Complaint is sixty-three pages long and contains eleven counts. On January 16, 2012, the Board filed a Motion to Strike Portions of Amended Complaint ("Motion to Strike"). Doc. No. 36. The active motions are ripe for resolution.

## II.    STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially

create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery, "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* is consistent with *Twombly*'s facial plausibility standard).

## III.   LEGAL ANALYSIS

### A.   Counts I and II—Assault and Battery

The Board contends that the Amended Complaint fails to state cognizable assault and battery claims in relation to it. Specifically, the Board contends that (1) county school boards cannot be held vicariously liable for intentional torts because they are inherently outside the scope of employment; and (2) in the event the Board can be held liable, the Amended Complaint's factual allegations are insufficient to show that Tague was acting within the scope of his employment.

"It is well settled that an employer may be held vicariously liable under the doctrine of *respondeat superior*, for tortious acts committed by an employee, so long as those acts are within the scope of employment." *Tall v. Bd. of Sch. Comm'rs*, 706 A.2d 659, 667 (Md. Ct. Spec. App. 1998). As a general rule, "an employee's tortious conduct is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer." *Id.*

In reviewing an intentional infliction of emotional distress claim brought against the

Charles County Board of Education, Judge Chasanow has held:

> Maryland courts have recognized that a county school board may not be held
> liable for intentional torts under a *respondeat superior* theory because such torts
> are never considered within the scope of an individual's employment. *See James
> v. Frederick Co. Pub. Schools*, 441 F. Supp. 2d 755, 760–61 (D. Md. 2006); *see
> also Hunter v. Bd. of Ed. of Montgomery Co.*, 292 Md. 481, 491 n.8, 439 A.2d
> 582 (1982). In *Hunter*, the Court of Appeals of Maryland noted that although
> individual employees may be liable for intentional torts, such liability does not
> extend to a school board because an intentional tortious action constitutes an
> abandonment of employment and is not "done in furtherance of the beneficent
> purposes of the educational system." *Hunter*, 292 Md. at 491 n.8, 439 A.2d 582.
> Because Plaintiff cannot hold a county board of education liable for intentional
> torts, his cause of action for intentional infliction of emotional distress cannot
> prevail.

*Bishop v. Bd. of Educ. of Calvert Cnty.*, Civil Action No. DKC 11–1100, 2011 WL 2651246, at

*9 (D. Md. July 5, 2011). This principle, as it has been applied to county school boards in

Maryland, establishes that liability for intentional torts committed by Tague is not imputable to

the Board.

Rosa might argue that this principle is inapplicable to the instant case because Tague and

Rosa were not working in a learning or teaching environment, but rather, a traditional office

environment. Still, the Amended Complaint's allegations are insufficient to support the inference

that Tague acted within the scope of his employment when partaking in the challenged conduct.

Traditionally, Maryland courts have been reluctant to hold employers vicariously liable for

sexual assaults committed by their employees. *See Green v. Wills Group, Inc.*, 161 F. Supp. 2d

618, 626 (D. Md. 2001) (stating that, under Maryland law, "an employer is not vicariously liable

for the torts of assault and battery based on sexual assaults by another employee as they are

outside the scope of employment"); *Tall*, 706 A.2d at 670 (citation and internal quotation marks

omitted) ("as a matter of law, employer was not vicariously liable for sexual assault and harassment of employee, as acts were outside the scope of employment").

These courts have reasoned that sexual assault constitutes such an unexpected and outrageous act that one cannot reasonably conclude that the employer authorized it or that the employee committed it in furtherance of the employer's business. *See, e.g., Doe v. United States*, 769 F.2d 174, 175 (4th Cir. 1985) (holding that employer was not vicariously liable for sexual misconduct of an Air Force social worker because employee was "acting for his personal gratification"). Because the alleged assault and battery in this case were based on sexual assaults, they cannot be considered to have occurred in the scope of employment. Therefore, Rosa failed to state a facially plausible claim against the Board for assault and battery.

### B.      Count III—Negligent Supervision and Retention

Under Maryland law, a party bringing a negligent supervision and retention claim must show: (1) that her injury was caused by the tortious conduct of a coworker; (2) that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type; (3) that the employer failed to use proper care in selecting, supervising, or retaining that employee; and (4) that the employer's breach of its duty was the proximate cause of the [p]laintiff's injuries. *Bryant v. Better Bus. Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (citations omitted).

Rosa argues that the Board is liable for the negligent supervision and retention of Tague. Rosa's negligence claim is predicated on the assault and battery Tague allegedly inflicted on her in the two June 2010 incidents. The Board moves to dismiss this claim solely on the ground that

the Amended Complaint fails to sufficiently state that the Board knew or should have known that Tague was capable of committing the alleged sexual assault.

In the Amended Complaint, Rosa alleges two ways in which the Board knew or should have known of Tague's inappropriate sexual conduct. First, Rosa asserts that an employee witnessed Tague having sex with a co-worker in the mail room after office hours and reported the act to a security guard employed by the Board. Rosa argues that the information given to the guard, acting as an agent of the Board, sufficiently demonstrates that the Board had constructive notice of Tague's behavior. In the alternative, Rosa cites the second occasion in which Tague was caught having sex with a different co-worker during office hours in his office. This event, by contrast, allegedly was reported directly to Human Resources.

Construing the facts in a light most favorable to Rosa, the Amended Complaint sufficiently states that the Board knew or should have known about Tague's sexually inappropriate behavior. The Amended Complaint expressly states that Human Resources was notified of the sexual act that occurred in Tague's office during normal business hours and in the office. Armed with such notice, it is facially plausible that the Board reasonably knew or should have known of Tague's sexually inappropriate behavior.

This is especially the case because a separate instance of sexual conduct allegedly was reported to Brian Law, security personnel to the Board. Although the Amended Complaint does not explicitly state that Law reported this conduct to the Board, it states that Law ensured the employees that security cameras would be installed to deter future instances of such conduct. The seriousness of this measure, coupled with the previous allegations of actual notice, suffice to

state a cognizable claim that the Board had actual or constructive notice of tortious conduct of a sexual nature. Accordingly, the Court denies the Board's Motion to Dismiss as to Count III.

### C.  Counts IV, V, and VI—Article 24 of the Maryland Declaration of Rights

Article 24 of the Maryland Declaration of Rights states, "No man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

Md. Decl. of Rights, art. 24.

Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth Amendment of the United States. *See Pitensberger v. Pitensberger*, 410 A.2d 1052, 1056 (Md. 1980). In other words, "[i]t has been clearly established that Article 24 protects the same rights as the Fourteenth Amendment . . . ." *Barnes v. Montgomery County, Md.*, 798 F. Supp. 2d 688, 700 (D. Md. 2011) (citations omitted). Therefore, the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment. *See, e.g.*, *Okwa v. Harper*, 757 A.2d 118, 140–41 (Md. 2000) (citing cases); *Murphy v. Edmonds*, 601 A.2d 102, 108 (Md. 1992) (citing cases). Consequently, Maryland courts rely on federal decisions interpreting the Fourteenth Amendment as authority for interpreting Article 24. *See, e.g.*, *Att'y Gen. of Md. v. Waldron*, 426 A.2d 929, 946 (Md. 1981); *Pitsenberger*, 410 A.2d at 1056.

#### 1.  Count IV—Due Process

Rosa contends that Tague's alleged touching of her buttocks, patting of her leg, raising of her skirt, and the groping her breasts constituted a deprivation of her liberty and bodily integrity amounting to a substantive due process violation of Article 24. Rosa further alleges that Tague

was a state actor who acted in the scope of his employment during these incidents and, as a result, the Board can also be adjudicated liable for the constitutional violations.

This argument lacks merit. Rosa's substantive due process ("loss of liberty") claim is not cognizable because her equal protection claim is considerably more applicable to the allegations stated in the Amended Complaint. The United States Supreme Court has held that courts should analyze excessive force claims under the rubric of the Fourth Amendment, not substantive due process under the Fourteenth Amendment, to cabin the scope of the indefinite concept of substantive due process. *See Graham v. Connor*, 490 U.S. 386, 388, 394 (1989). In a later case, the Supreme Court read *Graham* for the proposition that "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Connecticut v. Gabbert*, 526 U.S. 286, 293 (1999) (citation and internal quotation marks omitted).

In this case, Rosa's allegations clearly sound in sexual harassment. Sexual harassment claims fall under the rubric of equal protection, not substantive due process. *See Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 111 (Md. 2000). Notably, the allegations purporting to support Rosa's Article 24 loss of liberty claim are basically the same allegations purporting to support her Article 24 equal protection claim. As a result, in light of *Graham* and its progeny, the Court dismisses Rosa's Article 24 "loss of liberty" claim as a matter of law.

## 2. *Count V—Equal Protection*

"The equal protection clause confers a right to be free from gender discrimination that is not substantially related to important governmental objectives." *Beardsley v. Webb*, 30 F.3d 524,

11

529 (4th Cir. 1994) (citing *Davis v. Passman*, 442 U.S. 228, 234–35 (1979)). "Applying this precept, courts have held that intentional sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983." *Id.* (citations omitted). "Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983." *Id.* (citations omitted).

"Title VII makes it unlawful for an employer 'to discriminate against any individual with respect to [her] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex.'" *Barnes v. Metro. Mgmt. Grp., L.L.C.*, No. 11–CV–3355 AW, 2012 WL 1552799, at *2 (D. Md. April 27, 2012) (quoting 42 U.S.C. § 2000e–2(a)(1)). "Sexual harassment creating a hostile or abusive atmosphere in the workplace gives rise to a claim of sex discrimination under Title VII." *Beardsley*, 30 F.3d at 529 (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986)). "To violate Title VII, conduct must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Meritor Savings*, 477 U.S. at 67). "Whether a party has established a hostile working environment under Title VII 'can be determined only by looking at all the circumstances, [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In this case, the Amended Complaint sufficiently states an equal protection claim based on Tague's alleged sexual harassment of Rosa. The Amended Complaint states that Tague made numerous sexually inappropriate remarks to her, including solicitations for sex. Furthermore, the Amended Complaint alleges that Tague lifted up Rosa's dress and grabbed her breasts. These

events were allegedly so severe that criminal charges were initiated against Tague. Accordingly, Rosa has stated a cognizable equal protection claim as to Tague.

The Amended Complaint, however, fails to state a facially plausible equal protection claim as to the Board. To do so, Rosa's allegations would have to support the inference that the Board's action, or lack thereof, caused Rosa to be subjected to the alleged harassment. *See* 42 U.S.C. § 1983.

Even construed in the most favorable light, Rosa's allegations fail to create a plausible inference of causation on the part of the Board. Although the allegations support the inference that the Board had actual notice of sexually inappropriate conduct on the part of Tague, these instances of sexual misconduct did not involve Rosa. The connection between this conduct and his alleged harassment of Rosa is too tenuous to warrant the conclusion that the Board's failure to take action caused the deprivation of which Rosa complains. Rather, the allegations indicate that Tague's willful actions were a decidedly more direct and immediate source of the complained-of harm. Granted, the above analysis implies that Rosa may be able to prove causation on the part of the Board with respect to her state law negligence claims. Generally, however, constitutional torts comprehend a higher threshold of causation than state law torts. *Cf. Doe v. Board of Educ. of Prince George's County*, Civil Action No. AW–11–03229, 2012 WL 3563973, at *9 (D. Md. Aug. 16, 2012) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). Therefore, Rosa has failed to state a facially plausible Article 24 equal protection claim vis-à-vis the County.

### 3. Count VI—Loss of Property

Article 24 "protect[s] an individual's interests in substantive and procedural due process." *Higginbotham v. Pub. Serv. Comm'n of Md.*, 909 A.2d 1087, 1094 (Md. Ct. Spec. App. 2006) (quoting *Samuels v. Tschechtelin*, 763 A.2d 209, 230 (Md. Ct. Spec. App. 2000)). "To be successful in an action alleging denial of procedural due process in violation of a property interest, a plaintiff must demonstrate that he had a protected property interest, that he was deprived of that interest, and that he was afforded less process than was due." *Id.* (quoting *Samuels*, 763 A.2d at 231 (2000)). "A colorable property interest in a position of employment requires 'a legitimate claim of entitlement' to continued employment." *Id.* (quoting *Samuels*, 763 A.2d at 231) (some internal quotation marks omitted).

Rosa alleges that her "property" interest includes her employment as an office assistant in the Food Service Department and her "freedom and ability to be gainfully employed in her chosen profession." She further asserts that the Board violated her due process rights when it demoted her from her position as an office assistant in the Food Service Department to work as an office clerk with T.C. Martin Elementary.

The Board responds that Rosa lacked a recognized property interest in her employment as an office assistant. The Board also asserts that Rosa fails to provide any factual allegations that either Defendant actually restricted her freedom to be gainfully employed in her chosen profession.

The Board's arguments are meritorious. Rosa alleges that the Board employed her as a *temporary* office assistant. In other words, she alleges the existence of no contract entitling her to be employed with the Board for any specific term. Nor does Rosa allege that she was a tenured

faculty member. These observations leave room for only the inference that Rosa was an at-will employee. Generally, "a non-tenured State or local government employee who serves 'at will' is *not* regarded as having a property right in continued public employment." *Elliott v. Kupferman*, 473 A.2d 960, 966 (Md. Ct. Spec. App. 1984) (citing cases).

Moreover, the Amended Complaint inadequately alleges that Tague and the Board restricted Rosa's freedom to be gainfully employed. Although Rosa was transferred to another location, she actually remained employed by the Board. Besides, even if Rosa's loss of property claim were otherwise cognizable, it would likely fail for being largely duplicative with her equal protection claim. For these reasons, as a matter of law, the Court dismisses Rosa's loss of property due process claim.

**D.      Count VII—Article 26 of the Maryland Declaration of Rights**

In pertinent part, Article 26 states as follows: "[A]ll warrants, with or without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive . . . ." Md. Decl. of Rights, art. 26. Article 26 protects the same rights that the Fourth Amendment protects. *Barnes*, 798 F. Supp. 2d at 700 (citations omitted). Therefore, as explained above, the analysis under Article 26 essentially duplicates the analysis under the Fourth Amendment, and it is proper to rely on federal decisions interpreting the Fourth Amendment as authority for interpreting Article 26. *See, e.g.*, *Okwa*, 757 A.2d at 140–41 (citing cases).

Fundamentally, the Fourth Amendment—and corresponding Article 26 constitutional protections—are in place to protect against police action, not sexual assault by a government employee in a workplace setting. Rosa's reliance on case law analyzing such constitutional violations solely in the context of police action further underscores the Fourth Amendment's

inapplicability. In short, in this case, no search or seizure occurred within the meaning of the

Fourth Amendment. To the extent it otherwise did, Rosa's claim still duplicates her equal

protection claim. Thus, the Court dismisses Count VII.

### E.        Count VIII—*Longtin* Claim

In Count VIII, Rosa alleges a "pattern or practice" claim under Maryland state law

against the Board. *See generally Prince George's County v. Longtin*, 19 A.3d 859 (Md. 2011).

The crux of Rosa's argument is that the Board had a pattern or practice of allowing sexual

harassment (a constitutional tort under Article 24) to persist in the workplace.

*Longtin* claims are essentially Maryland's version of *Monell* claims. *See Monell v. Dep't*

*of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that

plaintiffs can sue municipalities for damages for constitutional deprivations where policies or

customs of the municipalities cause the constitutional deprivations. *See id.* at 690–94. The

*Monell* Court expressly limited its holding to local government units which are not considered

part of the State for Eleventh Amendment purposes. *Id.* at 691 n.54.

Against the backdrop of *Monell*, the *Longtin* court considered whether "Maryland law

recognizes a 'pattern or practice' claim against a local government for unconstitutional policies."

19 A.3d at 883. The court answered this inquiry affirmatively and, in so doing, concluded that

the substantive standards underlying the claims diverged to an appreciable degree. *See id.* at

883–89. Even so, the *Longtin* court neither stated nor intimated that plaintiffs could institute

pattern or practice claims against state government agencies. *See id.*

In view of this authority, the Court dismisses Rosa's *Longtin* claim outright. It is well-

settled in Maryland that the "Court of Appeals undoubtedly considers county school boards

instrumentalities of the State rather than independent, local bodies." *Zimmer-Rubert v. Bd. of Educ. of Balt. Cnty.*, 947 A.2d 135, 141–42 (Md. Ct. Spec. App. 2008) (citing cases). Accordingly, *Longtin*, which extends pattern or practice liability to local governments, is inapplicable on its face. Rosa argues that the policy considerations undergirding *Longtin* justify extending pattern or practice liability to state agencies. However, the Court deems it exceedingly unlikely that the Court of Appeals of Maryland would have ushered in such a radical change in legal landscape *sub silentio*. Therefore, the Court dismisses Count VIII of the Amended Complaint.

### F.        Counts IX, X, and XI—Title VII Claims

Rosa claims that the Board is liable under Title VII for sexual harassment (hostile work environment), sexual harassment (quid pro quo), and retaliation.

At the outset, the Court must address the Board's curious argument that the Court lacks subject matter jurisdiction to hear Rosa's Title VII constructive discharge claim because Rosa failed to exhaust administrative remedies. Specifically, the Board asserts that Rosa premises her Title VII claims on a theory of constructive discharge even though she failed to raise this theory in her EEOC charge. This alleged failure, according to the Board, prevents her from raising a constructive discharge claim.

This argument makes little sense. Rosa has asserted no constructive discharge claim and, furthermore, no such claim exists. Constructive discharge is not a claim per se. Rather, it is essentially an equitable doctrine imported from labor law that enables Title VII plaintiffs to obtain backpay in certain circumstances. In a nutshell, Rosa's EEOC charge is quite detailed and she checked in the boxes for both sexual discrimination and harassment, which are the claims before the Court. Accordingly, Rosa properly exhausted administrative remedies and may raise a

theory of constructive discharge under the rubric of her Title VII claims at a later stage in the proceeding if she so desires.

> 1.   *Count IX –Sexual Harassment (Hostile Work Environment)*

To demonstrate a hostile work environment, a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on her sex; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer. *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). Here, the Board's Motion to Dismiss challenges only the fourth element. That is, the Board argues that Rosa failed to state a facially plausible claim that the alleged sexual harassment is imputable to the Board.

Employer liability can be established in two ways: negligence or vicarious liability. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). "In a case where an employee is sexually harassed by a coworker, the employer may be liable with negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Schollon Prods.*, 335 F.3d 325, 333 (4th Cir. 2003). In this way, negligence sets a "minimum standard" for employer liability under Title VII claims. *Burlington*, 524 U.S. at 759.

Alternatively, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Id.* at 765. "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages . . . ." *Id.* (citation omitted). In other words, the *Ellerth/Faragher* affirmative defense is unavailable in cases where the employee quits in response to a tangible employment action. *See id.* Generally, a tangible employment action is "an employer-sanctioned adverse action officially changing [the

18

employee's] employment status or situation." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). Tangible employment actions include humiliating demotions. *See id.*

Judged against these principles, Rosa has stated a cognizable claim for employer liability. As for negligence liability, the Court incorporates by reference its analysis in Part III.B, *supra*, in which it held that Rosa stated a facially plausible claim in relation to the Board for negligent supervision and retention. Furthermore, Rosa has adequately alleged that she experienced a humiliating demotion. Rosa alleges that, after she reported Tague's harassment and filed for the Peace Order, the Board transferred her to T.C. Martin Elementary. There, Rosa avers that she assumed job duties that fell below her intelligence level and were substantially less sophisticated than the work she was responsible for while employed at the Food Service Department. Rosa further alleges that she received substantially fewer work hours. Taken as true and construed favorably, these allegations support the inference that Rosa experienced a humiliating demotion that would have caused a reasonable person to resign. For these reasons, the Court denies the Board's Motion to Dismiss as to Count IX.

### 2.   *Count X—Sexual Harassment (Quid Pro Quo)*

To establish a quid pro quo sexual harassment claim under Title VII, a plaintiff must satisfy five elements: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; that is, the acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment; and (5) the employer either knew or should have known of the harassment and took no effective remedial action. *See Okoli*, 648 F.3d at 222.

At this stage, the Board disputes only element (4). As Rosa fails to allege that Tague expressly conditioned the receipt of job benefits and/or the avoidance of job detriments on sexual favors, the dispositive question is whether Tague implicitly conditioned the maintenance of job benefits and/or the avoidance of job detriments on Rosa's submission to his sexual overtures.

Even examining the Amended Complaint through a lenient lens, the Court answers this question negatively. The Amended Complaint contains no allegations supporting the inference that Rosa would lose out on a job benefit if she failed to submit to Tague's conduct. Nor do Rosa's allegations indicate that she had to brook the sexual behavior to obviate her transfer to T.C. Martin Elementary. In essence, Rosa alleges that the Board transferred her after she complained about the two instances in which Tague sexually assaulted her and acquired a Peace Order against him. Although these averments may create a connection between her complaints and the adverse action of being transferred, they fail to forge a nexus between the transfer and Tague's advances. In other words, Rosa's factual contentions do not lead one to believe that a reasonable person under similar circumstances would have understood that she would be transferred—or even that Tague would try to have her transferred—if she failed to succumb to his sexual solicitation. Nor has Rosa adequately alleged that the other employees who plausibly gave in to Tague's advances received more favorable treatment. For these reasons, the Court grants the Board's Motion to Dismiss as to Count X.

*Count XI—Retaliation*

To state a prima facie case of retaliation under Title VII, a plaintiff must establish: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exist[s] between the protected activity and the adverse employment action." *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (2011)

(citing *Davis v. Dimensions Health Corp.*, 639 F. Supp. 2d 610, 616–17 (D. Md. 2009)). "An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits." *Id.* (citing *Davis*, 639 F. Supp. 2d at 617). "One court has defined opposition as 'utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Id.* (quoting *Davis*, 639 F. Supp. 2d at 617). "For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct [] she opposes constitutes unlawful discrimination under Title VII." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee communicates to her employer her reasonable belief that the employer has engaged in discrimination." *Id.* (citing *Crawford v. Metro. Gov't of Nash. and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)).

The Supreme Court has defined adverse employment actions as "employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). For an action to be materially adverse, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* Courts usually determine whether the employer's actions are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination by considering the totality of the circumstances. *See id.* at 67–72. The reassignment of job duties may suffice to dissuade a reasonable worker from making or supporting a charge of discrimination. *See id.* at 71. The following nonexhaustive list of factors informs whether a reassignment of job duties could well dissuade a reasonable worker from making or supporting a charge of discrimination:

(1) the position's prestige; (2) whether it is commensurate with the employee's qualifications; and (3) whether it causes the employee to undergo financial hardship. *See id.* at 71–73.

Under element (3) of the prima facie case for retaliation, the plaintiff must adequately allege the existence of a causal relationship between the protected activity and the adverse action. Typically, plaintiffs may demonstrate such a causal relationship via two evidentiary routes. First, plaintiffs may show that the adverse act bears sufficient temporal proximity to the protected activity. *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). Second, as this Court has consistently held, "plaintiffs may state a prima facie case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation." *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (citing cases); *see also, e.g.*, *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (holding that "other relevant evidence may be used to establish causation" where temporal proximity is missing).

In this case, Rosa has stated a facially plausible retaliation claim. As for element (1), Rosa alleges that she notified Human Resources of Tague's conduct. Furthermore, given the severity of the alleged harassment (e.g., groping and sexually explicit comments), one cannot question whether Rosa had a reasonable and good faith belief that it contravened Title VII. Therefore, the Amended Complaint sufficiently states that Rosa communicated to the Board her reasonable belief that she was experiencing unlawful sex discrimination.

As for element (2), Rosa has adequately alleged that the Board took adverse action against her. The Court held above that Rosa has sufficiently stated that her transfer from the Food Service Department to T.C. Martin constituted a tangible employment action in the form of a humiliating demotion. To reiterate, Rosa alleges that her employment at T.C. Martin required

her to assume job duties that fell below her intelligence level and were substantially less sophisticated than the work she was responsible for at the Food Service Department. These allegations support the inference that the new position lacked relative prestige and was not commensurate with her qualifications. Rosa also avers that she received substantially fewer hours at the new position, buttressing the deduction that the transfer caused her to incur economic detriment. In view of these factual averments, it is plausible that the prospect of such a transfer would have dissuaded a reasonable person from making or supporting a charge of discrimination. Thus, Rosa has adequately alleged the presence of adverse action.

Rosa has also adequately alleged that her complaints concerning Tague's conduct caused the Board to transfer her. Rosa lodged her informal complaint with Human Resources on June 14, 2010. Human Resources notified her of her transfer on July 28, 2010, which falls approximately one and a half months after the initial complaint. Temporal proximity of a month and a half suffices to state a cognizable causation claim. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003); *Barnes v. Metro. Mgmt. Grp., L.L.C.*, No. 11–CV–3355 AW, 2012 WL 1552799, at *4 (D. Md. Apr. 27, 2012). This is especially the case because Rosa has presented additional allegations that are probative of causation. Specifically, Rosa alleges that, even though she sought and secured a Peace Order against Tague on June 23, 2010, the Board reinstated Tague at the end of the month. In conjunction with the other allegations, it is plausible that these facts exhibit a protective animus on the Board's part in Tague's favor. For these reasons, the Court denies the Board's Motion to Dismiss as to Count XI.

### G.      Motion to Strike

The Court denies the Board's Motion to Strike summarily. Although the Amended Complaint is long and somewhat redundant, Rosa sets forth her allegations with the requisite

degree of clarity. In fact, the Court relied on some of the allegations that the Board pegs as

"scandalous," "uncorroborated," and "impertinent" in the instant Opinion. Finally, striking

portions of the Amended Complaint would serve no purpose other than delay now that the Court

has ruled on it and determined that several of Rosa's claims are cognizable. Accordingly, the

Court denies the Board's Motion to Strike.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the

Board's Motion to Dismiss and **DENIES** the Board's Motion to Strike. Consequently:

• The Court dismisses Counts I and II (assault and battery) in relation to **only** the Board;

• Count III (negligent supervision and retention) remains in the suit;

• The Court dismisses Count IV (Article 24 substantive due process) as to both Tague and the Board;

• The Court dismisses Count V (Article 24 equal protection) in relation to **only** the Board;

• The Court dismisses Count VI (Article 24 loss of property) as to both Tague and the Board;

• The Court dismisses Count VII (Article 26 search and seizure) as to both Tague and the Board;

• The Court dismisses Count VIII (*Longtin*);

• Count IX remains in the suit (sexual harassment—hostile work environment);[1]

• The Court dismisses Count X (sexual harassment—quid pro quo) as to **only** the Board;[2]

• Count XI (retaliation) remains in the suit.[3]

A separate Order follows. The Court will issue a Scheduling Order.

_____August 27, 2012_____                              _____/s/_____
        Date                                           Alexander Williams, Jr.
                                                       United States District Judge

---

[1] Rosa asserts this claim against Tague also. Although there appears to be no statutory basis for liability against Tague for this claim, the Court will refrain from sua sponte dismissing this claim against him.
[2] Rosa asserts this claim against Tague also. Although there appears to be no statutory basis for liability against Tague for this claim, the Court will refrain from sua sponte dismissing this claim against him.
[3] Rosa asserts this claim against Tague also. Although there appears to be no statutory basis for liability against Tague for this claim, the Court will refrain from sua sponte dismissing this claim against him.